IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CANDACE TAYLOR and CARLA MORENO, individually and on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No. 23-cv-16404<br><br>Hon. Sharon Johnson Coleman<br><br>Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

　　　　Plaintiffs Candace Taylor and Carla Moreno ("**Plaintiffs**"), by and through their counsel, respectfully submit this Response in Opposition to Defendant Union Pacific's ("**Defendant**") Motion to Dismiss Plaintiffs' Class Action Complaint (the "**Motion**").

## I.　　INTRODUCTION

　　　　Defendant's Motion is largely based on what is a fundamental misunderstanding of the types of claims that can be brought under the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et. seq* ("**GIPA**"). Plaintiffs' claims are premised upon an unlawful request, **not** on discrimination. Section 25(c)(1) of GIPA states that a company that employs Illinois residents shall not request a person's genetic information as a condition of employment or preemployment application. GIPA defines "genetic information" to include family medical history. In enacting GIPA, the primary purpose of the Legislature was to reassure members of the public that they could learn their genetic makeup without fear that this information could later be demanded from them or used against them. The Legislature determined that even simply requesting genetic

1

information from employees could deter them from obtaining genetic testing. That is why GIPA prohibits companies from even making such a request.

As such, a showing of discrimination is not required to state a claim under GIPA. Plaintiffs are only required to allege that (1) Defendant requested their genetic information in the form of their family medical history, and (2) that the request was a condition of employment or preemployment application. Defendant does not, and cannot, dispute that Plaintiffs' Class Action Complaint (the "**Complaint**", ECF No. 1-1) pleads these requisite elements. Thus, the Complaint states a plausible claim that Defendant violated the rights of Plaintiffs and numerous other Illinois residents by improperly requesting their family medical history during a preemployment physical. To be sure, GIPA also provides protection against discrimination in Sections 25(c)(2)-(3), but that is a separate prohibition under GIPA and is not relevant to Plaintiffs' claims, which are based on an unlawful request under Section 25(c)(1), not on discrimination.

Next, Defendant argues that family medical history does not constitute genetic information. However, as set forth below, Defendant's position runs counter to the plain language of both GIPA and GINA, its federal counterpart, where the definition of genetic information unequivocally includes family medical history. Similarly, Defendant's argument that Plaintiffs were not aggrieved by Defendant's conduct is anathema to Illinois Supreme Court precedent which holds that a violation of one's rights under a statute such as GIPA confers standing because a party is aggrieved when his or her statutory rights are impaired by the unlawful conduct of the other party, such as the unlawful request made by Defendant here. Moreover, Defendant's attempt to artificially inject additional atextual elements pertaining to inadvertent requests and Defendant's intent are flawed. Defendant cannot simply graft new pleading elements onto GIPA where no such

elements exist. Defendant made an unlawful request. Plaintiffs do not need to guess the justification for Defendant's conduct.

In sum, Defendant's Motion asks this Court to disregard the commonly understood and universally accepted meaning of GIPA, depart from the plain and unambiguous language of the law, read into the statute conditions or limitations the Legislature did not express, and interpret the law in a way that is inconsistent with the objectives and purposes the Legislature sought to achieve. As such, the Court should deny Defendant's Motion in its entirety.

## II. FACTUAL BACKGROUND

The gravamen of Plaintiffs' claims, as alleged in the Complaint, is not complicated. Plaintiffs alleges that they applied to work for Defendant. Complaint, ¶¶ 27, 39. In January 2020, during the application and hiring process, Defendant required Plaintiff Carla Moreno to submit to a preemployment physical conducted on-site by a medical provider employed by Defendant. Complaint, ¶ 40. As part of the physical, Defendant directly requested Ms. Moreno to disclose "whether various diseases or disorders with a genetic predisposition had manifested in her family members, including whether Ms. Moreno's parents had cardiac health, cancer, and diabetes, among other conditions." Complaint, ¶¶ 40-44. Likewise, Defendant requested the same information from Plaintiff Candace Taylor during an in-house preemployment physical conducted by Defendant in November 2022. Complaint, ¶¶ 28-32. Plaintiffs' hiring was conditioned upon successfully completing the physicals, which required them to subject themselves to the unlawful requests for their genetic information in the form of their family medical history. Complaint, ¶¶ 35-37, 47-49.

Upon information and belief, Defendant requests this genetic information for the purpose of avoiding risk and/or liability for injuries caused by genetic conditions that Defendant believes

could be inherited and exacerbated by workplace conditions. Complaint, ¶¶ 51-53. Defendant was or should have been aware of its obligations under GIPA and that it was failing to comply with the statute. Complaint, ¶¶ 54-55. As discussed below, this is more than sufficient to plausibly state a claim for a violation of GIPA.

### III. NEITHER GIPA'S TEXT NOR LEGISLATIVE HISTORY SUPPORTS DEFENDANT'S ARGUMENTS

Perhaps recognizing that the allegations in the Complaint satisfy the pleading requirements in the text of GIPA, Defendant's Motion attempts to artificially raise the bar by suggesting several new – and non-existent – requirements for an unlawful request claim under Section 25(c)(1). Defendant argues – without support – that, in order to state a claim, Plaintiffs must allege discrimination or an adverse employment action in addition to an unlawful request. *See* Motion, pp. 3-5. This is a classic strawman argument; nothing in GIPA requires a plaintiff to show any of Defendant's proposed additions in order to state a claim. GIPA protects against discrimination, but it also separately protects individuals against unlawful requests for their family medical history. Defendant does not, and cannot, point to any law or statutory language supporting its interpretation to the contrary.

**A. GIPA Prohibits Defendant from Requesting Plaintiffs' Family Medical History**

Illinois enacted GIPA in 1998. In setting forth its intent in passing GIPA, the Legislature explained that the statute would "limit [] the use or disclosure of, **and requests for**, protected health information to the minimum necessary." 410 ILCS 513/5(5) (emphasis added). GIPA was amended in 2008 to harmonize the statute with its federal counterpart, the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff, et seq. ("**GINA**"). The 2008 amendments were specifically intended to increase the protections provided for employees.

Section 25 of GIPA explicitly states what employers can and cannot do with regard to genetic information. Section 25(a) of GIPA provides that companies that employ individuals in Illinois "shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to [GINA.]" Section 25(c) of GIPA states: "An employer … shall not directly or indirectly" do any of the following:

> **(1)** solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, … as a condition of employment, preemployment application…;
> **(2)** affect the terms, conditions, or privileges of employment, preemployment application, … or terminate the employment, … of any person because of genetic testing or genetic information with respect to the employee or family member…;
> **(3)** limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, …; and
> **(4)** retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c).

GIPA and GINA adopt the broad definition of "genetic information" from 45 C.F.R.160.103, the regulations pertaining to the Health Insurance Portability and Accountability Act. 42 U.S.C. § 2000ff(4)(A)(iii); 410 ILCS 513/10; *see* 45 C.F.R. § 160.103. Thus, "genetic information" includes information about the manifestation of a disease or disorder in family members of an individual. *See* 45 C.F.R. § 160.103. Finally, "family member" means, with respect to an individual, individuals related by blood or law to the individual or their spouse or child. 410 ILCS 513/10. Thus, to sufficiently plead a violation of GIPA Section 25(c)(1), a plaintiff need only allege that (1) there was a request for information about the manifestation of a disease in a family member related by blood or law and (2) the request was a condition of employment. Here,

5

Defendant concedes that Plaintiffs have alleged both elements. *See* Motion, p. 4, citing Complaint, ¶ 27 ("Plaintiffs allege that they were asked about their family medical history during a pre-employment physical").

### B. GIPA does not Require Discrimination or an Adverse Employment Action as an Element of a Claim for Improper Request of Genetic Information

Defendant asks the Court to ignore the plain text of GIPA and create a non-existent "discrimination" pleading requirement. Despite these efforts, black letter principals of statutory interpretation establish that discrimination is not required to allege a GIPA violation. Under Illinois law, "[w]hen construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute." *Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021, ¶ 15, 28 N.E.3d 747.[1] "In interpreting a statute, no part should be rendered meaningless.… Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express." *Id*.

Plaintiffs' claims are premised exclusively on Section 25(c)(1) of GIPA. Nothing in sub-section (c)(1) suggests that a plaintiff must show discrimination or an adverse employment action to state a claim. All that sub-section (c)(1) requires is that the employer cannot "solicit" or "request" "genetic information as a condition of employment, [or] preemployment application[.]" As such, any company that makes such a solicitation or request violates GIPA. To be clear, Section 25 does prohibit discrimination, misuse, or adverse employment actions, but does so in different sub-sections. A complete reading of Section 25 shows that sub-section (c)(3) addresses discrimination and sub-sections (c)(2) and (c)(4) address adverse employment actions.

---

[1] Pursuant to this Court's Case Procedures regarding Memorandum of Law, attached within Exhibit A are copies of cited authority that is only published in an electronic database, other than those attached to the Motion.

However, nothing in Section 25 suggests that a plaintiff must show a violation of sub-sections (c)(2) through (c)(4) in order to establish a claim under sub-section (c)(1). Each sub-section provides different and discrete protections, a violation of any of which would separately give rise to liability. Therefore, Defendant's proposal to require proof of discrimination or an adverse employment action to state any GIPA claim would render sub-section (c)(1) meaningless. If Defendant had also discriminated against Plaintiffs on account of their genetic information after making an unlawful request, then Plaintiffs would have multiple GIPA claims against Defendant, but the absence of a discrimination allegation is irrelevant to Plaintiffs' unlawful request claims under sub-section (c)(1).

**C. Analogous Caselaw Confirms an Unlawful Request Claim does not Require Allegations of Discrimination or an Adverse Employment Action**

Finding no support in GIPA's text, Defendant unsuccessfully tries to rely on caselaw. Plaintiffs' claim under Section 25(c)(1) are a matter of first impression; as such, Defendant looks to GIPA's federal counterpart, GINA. However, GINA's separation of requirements mirrors that of GIPA, where GINA's sub-section (a) prohibits discrimination based on genetic information and sub-section (b) prohibits unlawful requests for such information. *See* 42 U.S.C. § 2000ff-1. Defendant plucks its argument from GINA's sub-section (a) (discrimination), while ignoring that GINA's sub-section (b) (unlawful request) is separate and discrete and does not share sub-section (a)'s requirements. Under GINA – just as under GIPA – a claim for discrimination stands apart from a claim for unlawful request. The two claims exist independently of each other, and one is simply not required for the other.

Defendant's mistake is clear from its reliance on *Allen v. Verizon Wireless*, No. 12-cv-482, 2013 WL 2467923 (D. Conn. June 6, 2013). In *Allen*, in asserting a GINA claim, the plaintiff never alleged that the defendant improperly requested genetic information in violation of 42 U.S.C. §

2000ff-1(b), but instead alleged that the defendant **discriminated** against her in violation of 42 U.S.C. § 2000ff-1(a). *Allen*, 2013 WL 2467923 at *72-73. Interestingly, the plaintiff in *Allen* did not allege that the defendant discriminated against her because of genetic information. *Id*. Rather, the plaintiff alleged that her short-term disability benefits claim was denied through the use of her family medical history that had been submitted for a separate family medical leave claim. The plaintiff's family medical history was only taken into account for her mother to confirm a proper foundation for the family leave; it was **not** used to ascertain whether the plaintiff would manifest inheritable conditions in the future. On this basis, the court found that the plaintiff had failed to state a claim for discrimination. *Id*. at *5-7.

*Allen* is inapposite to Plaintiffs' claims because here Plaintiffs are not pursuing a discrimination claim. Plaintiffs' pleading is clear – they are seeking relief under GIPA's sub-section (c)(1) based on Defendant's improper requests. Moreover, the Complaint's allegations, which are taken as true at this stage, state that Plaintiffs' family history was requested to assess the likelihood that Plaintiffs would manifest inheritable genetic conditions in the future. Because Plaintiffs' family history was taken into account with respect to Plaintiffs themselves, it is the hallmark example of genetic information as defined by GIPA.

Instead of *Allen*, which is limited to discrimination claims only, the Court should look to GINA cases pertaining to unlawful requests, such as *EEOC v. Grisham Farm Prods.*, 191 F. Supp. 3d 994 (W.D. Mo. 2016), wherein the court held that the defendant had violated 42 U.S.C. § 2000ff-1(b) by simply asking a prospective employee if he had consulted a doctor in the previous two years or discussed future diagnostic testing. *Id.* at 998. The plaintiff refused to respond to these questions. *Id.* at 995. The court reasoned that these questions would require an applicant to reveal genetic information and thus constituted an illegal request. *Grisham*, 191 F. Supp. 3d 994 (W.D.

Mo. 2016); *see also EEOC v. Dolgencorp, LLC*, 2022 U.S. Dist. LEXIS 132466, *38 (N.D. Ala. 2022) (granting the plaintiff's motion for partial summary judgment as to liability for a GINA claim because "Dollar General's agent … asked … job candidates whether their grandparents, parents, or children had significant medical problems, in violation of 42 U.S.C. § 2000ff-1(b)."). As in *Grisham* and *Dolgencorp*, the allegation here that Defendant improperly requested genetic information in the form of the manifestation of a disease in the Plaintiffs' family members is the basis for the violation.

In addition, federal courts universally hold that employers are liable under GINA where an unlawful request was made, regardless of whether the defendant actually obtained the plaintiff's protected genetic information in response to the unlawful request. *See Grisham*, 191 F. Supp. 3d at 994; *see also Dolgencorp*, 2022 U.S. Dist. LEXIS 132466, *38 (N.D. Ala. 2022); *Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, 2022 U.S. Dist. LEXIS 45553, *16 (S.D. Ind. 2022) (denying the defendant's motion to dismiss the plaintiff's GINA claim even though the defendant never acquired the plaintiff's genetic information); *Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682, *41-43 (E.D. Ky. 2018) (denying an employer's motion for summary judgment on GINA claim for unlawful request of genetic information where the plaintiff "refused to turn over her genetic information…" and although the defendant took no adverse employment action against the plaintiff, "Jackson's GINA claim arises from § 2000ff-1(b)" and "Because Jackson has put forward proof that the medical records requested contained protected 'genetic information' in the form of her family history … she has proven that Regal made an unlawful request for genetic information."). These cases confirm that a plaintiff properly alleges an unlawful request claim even when no genetic information was provided in response to the request, let alone discrimination or an adverse employment action. The request in and of itself constitutes a violation.

## IV. DEFENDANT MISCHARACTERIZES GIPA'S PURPOSE

Defendant also misinterprets the Legislature's intent behind GIPA, which was to encourage the public to embrace genetic testing by eliminating any perception that any information gleaned from those tests could later be used against them. To accomplish this goal, GIPA seeks to prevent and deter prohibited conduct by providing a broad private right of action with substantial potential liability for any entity that violates the statute.

Defendant selectively utilizes legislative commentary in a misguided attempt to portray prevention of discrimination as GIPA's sole purpose. However, the Court need look no further than GIPA itself to understand that its purpose is far broader. The Legislature concluded in Section 5 of the act: "Limiting [] **requests** for, protected health information to the minimum necessary to accomplish an intended purpose … is a key component of health information privacy." 410 ILCS 513/5(5) (emphasis added). The Legislature was concerned because "[d]espite existing laws, regulations, and professional standards …, many members of the public are deterred from seeking genetic testing **because of fear** that test results will be disclosed … or will be used in a discriminatory manner." 410 ILCS 513/5(2) (emphasis added). It, therefore, created GIPA to reassure the public that they could obtain genetic testing without fear of it being misused later. The best way to do that was to provide robust protection for the confidentiality of genetic information in order to prohibit even the perception that such information might be misused. *See* S. Debate Transcript, 90th Gen. Assemb. No. 47, at 3 (Ill. 1997) (statement of Sen. Hawkinson) (a "core tenant" of GIPA is "to ensure that an individual's '[genetic] information will be confidential[.]" Confidentiality of genetic information was likewise a core tenant of GINA: "this is a civil rights issue and a privacy issue …" 154 Cong. Rec. H2959 (daily ed. May 1, 2008) (statement of Rep. Castor).

Given that the stated goal of GIPA was to eliminate even the fear that genetic information could be used against an individual, thereby freeing that individual to acquire genetic information for health purposes, it makes sense that the Legislature would tell employers they could not "solicit, request, require or purchase genetic testing or genetic information." 410 ILCS 513/25(c)(1). Even a request for genetic information alone would raise questions about why the employer was asking for that information and could discourage people from learning about their family medical history. Because the purpose of GIPA is broader than merely preventing discrimination, Defendant's argument that a request, without discrimination or an adverse employment action, does not give rise to an actionable claim is inconsistent with the stated purpose of GIPA and should be rejected, as it was under GINA in *Jackson, supra.*

V. **BIPA'S BROAD PRIVATE RIGHT OF ACTION IS IDENTICAL TO GIPA'S AND THUS IS INSTRUCTIVE**

Despite Defendant's assertion to the contrary, this Court cannot fully assess the language and mechanics of GIPA without reference to BIPA. After all, among other things, BIPA and GIPA share identical language with respect to establishing a private right of action for aggrieved persons for violations of each statute; BIPA was enacted in 2008, the same year that GIPA was amended to harmonize the statute with GINA.

The Legislature created a broad individual right of action to enforce GIPA, using the same language that it used in BIPA. *Compare* 740 ILCS 14/20(a) *with* 410 ILCS 513/40(a). Thereunder, "[a]ny person aggrieved by a violation of this Act" can seek liquidated damages for negligent and/or reckless violations, injunctive relief, and attorney's fees and costs. Defendant provides no hint of support of its contention that BIPA's broad definition of aggrieved is not consistent with GIPA other than a self-serving misinterpretation of the scope of GIPA's protections.

The Illinois Supreme Court deemed a similar argument "untenable" in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 ¶ 25, 129 N.E.3d 1197. "More than a century ago, our court held that to be aggrieved simply 'means having a substantial grievance; a denial of some personal or property right.'" *Id.*, ¶ 30 (citing *Glos v. People*, 259 Ill. 332, 340 (1913)). "We must presume that the legislature was aware of that precedent and acted accordingly." *Id.*, ¶ 31. "[I]f a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law." *Id.*, ¶ 29. GIPA, like BIPA, codifies that individuals possess a right to be free from unlawful actions regarding personal information concerning their bodies. The duties imposed on private entities by both statutes define the contours of that statutory right. Accordingly, when an entity such as Defendant fails to comply with GIPA's requirements, that violation constitutes an impairment of this right. "No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Rosenbach*, 2019 IL 123186 ¶ 33.

The philosophy adopted by the Legislature for BIPA is the same as that for GIPA. Both statutes provide safeguards to insure that immutable personal information is properly honored; entities that fail to follow the statutes' requirements are subject to substantial potential liability. Unlike a credit card number or even a social security number, genetic and biometric information cannot be changed. The Legislature recognized that this information must be robustly safeguarded because, if it is impugned, the harm is irreversible and cannot be undone. Public welfare is advanced by BIPA and GIPA; that is the point of the statutes. Defendant's urge to limit Plaintiffs' right to seek recourse is completely antithetical to GIPA's preventative and deterrent purposes. There is no other enforcement mechanism available other than the private right of action authorized

in Section 40 of GIPA, thus it is clear that the legislature intended for this provision to have substantial force.

Given these similarities, the Court should adopt the Southern District of Illinois' conclusion in *Bridges v. Blackstone Grp., Inc.* that it is appropriate to apply the broad reading of aggrieved person as used in BIPA to GIPA. 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) ("In Illinois, 'a statute should be construed in conjunction with other statutes touching on the same or related subjects considering the reason and necessity of the law, the evils to be remedied, and the objects and purposes to be obtained.'") (citing *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175), 115 N.E.3d 1080. Defendant offers no compelling support for a finding to the contrary.

VI. **PLAINTIFFS ARE NOT REQUIRED TO ALLEGE DEFENDANT'S INTENT OR WHETHER THE INADVERTENT EXCEPTION APPLIES**

**A. Plaintiffs are not Required to Plead Recklessness or Intent Under GIPA**

Defendant confuses the standard for measuring culpability and damages with a substantive pleading requirement. Defendant's state of mind has no bearing on the plausibility of Plaintiffs' GIPA claims; it will merely determine what damages Plaintiffs may recover for each GIPA violation that occurred. In other words, Defendant's state of mind only relates to what relief Plaintiffs may seek if they established a GIPA violation. *See Webster v. Triad Senior Living, Inc.*, 2020 Ill. Cir. LEXIS 1449, *11 (Cook Cty. Aug. 31, 2020) (denying a motion to dismiss a BIPA claim on the same grounds: "Webster does not need to plead anything further than a violation of BIPA to pursue liquidated damages.") (citing *Dloogatch v. Brittcat*, 396 Ill. App. 3d 842, 851 (1st Dist. 2009), 920 N.E.2d 1161 (a plaintiff is generally "not required to plead a legal theory for calculating damages in the complaint"). The Illinois Supreme Court made clear in *Rosenbach* that the alleged statutory violation itself is sufficient to support a claim in light of the Legislature's use

13

of the "aggrieved person" language in BIPA. The same holds true in the context of a GIPA claim – nothing beyond an allegation that an employer made an unlawful request is required.

What Defendant planned to do with Plaintiffs' genetic information is only known by Defendant at this juncture. Thus, the issue of whether Defendant's conduct is merely negligent or rises to the level of recklessness is an issue of fact that can only be properly determined after discovery is completed. Yet, the Complaint nonetheless plausibly alleges that Defendant acted intentionally or recklessly in light of the fact that GIPA has existed for over 25 years and Defendant made no effort to comply with its requirements. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible.").

**B. Plaintiffs are not Required to Plead that the Inadvertent Exception does not Apply**

Defendant also argues – without support – that the Complaint fails to state a claim because, according to Defendant, its unlawful request was inadvertent. The inadvertent request exception is an affirmative defense that should be raised – if even applicable – in the context of a motion for summary judgment. *See Jackson, supra* (granting summary judgment to a plaintiff for an unlawful request claim because the record confirmed that a defendant failed to meet its burden of showing the request was inadvertent).

Defendant cites *Montgomery v. Union Pacific R.R.*, No. C-17-00201-TUC-RM, 2018 WL 6110930 (D. Ariz., Nov. 21, 2018) to argue that Plaintiffs are required to allege that the inadvertent exception does **not** apply, but Defendant fails to note that this ruling was made in the context of a motion for summary judgment. *Montgomery*, 2018 WL 6110930, at *26. In fact, Defendant

14

unintentionally argues against itself because the *Montgomery* court nonetheless denied the defendant's motion for summary judgment. *Montgomery*, 2018 WL 6110930, at *26. These factual issues surrounding Defendant's affirmative defenses are not yet ripe for determination, and certainly cannot act as a bar to Plaintiffs' claims at this juncture.

## VII. GIPA'S STATUTE OF LIMITATIONS IS FIVE YEARS

Section 13-205 of the Illinois Code of Civil Procedure provides that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. The Illinois Supreme Court recently held this five-year "catchall" applies to class action claims arising under BIPA because it does not contain an express limitations period. *See Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶¶ 33-37, 216 N.E.3d 845. Like BIPA, GIPA does not contain an express limitations period. *See* 410 ILCS 513/1, *et. seq*. Thus, the five-year catchall in the Code of Civil Procedure applies to Plaintiffs' GIPA claims.

Notably, for this reason, the Circuit Court of Cook County recently struck a statute of limitations affirmative defense with prejudice in a similar GIPA Section 25(c)(1) case. *See Paradies v. Alden Estates-Courts of Huntley, Inc.*, 2023-CH-01311 (Nov. 8, 2023) (holding that "the 5-year general limitations period (735 ILCS 5/13-205) applies to GIPA because it does not specify any other limitation and the alleged events here all took place within 5 years of the Complaint.") Defendant's assertion that "no court has determined what statute of limitations applies to GIPA" is patently false. *See* Motion, p. 8.

Here, Plaintiffs are well within the five-year limitations period. *See* Complaint, ¶¶ 28, 40. In addition, the putative class is defined to also exclude individuals outside this time period. *See* Complaint, ¶ 57. Defendant's Motion goes to great lengths to state the standards for the statute of limitations of various civil claims, but it utterly fails to properly apply those standards to this case.

15

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Defendant's motion to dismiss in its entirety.

Dated: February 5, 2024

Respectfully submitted,

/s/ Kyle D. McLean
Kyle D. McLean (SBN 6344126)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
T. (213) 376-3739
E. kmclean@sirillp.com

David J. DiSabato
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. 212-532-1091
E. ddisabato@sirillp.com

Edward A. Wallace
Mark R. Miller
Nicholas P. Kelly
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
 mrm@wallacemiller.com
 npk@wallacemiller.com
Firm ID: 65958

COUNSEL FOR PLAINTIFFS