**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CANDACE TAYLOR and CARLA MORENO, Individually and on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Case No. 23-cv-16404 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Candace Taylor and Carla Moreno bring a putative class action against Union Pacific Railroad Company ("Union Pacific") alleging that Union Pacific violated Section 25(c)(1) of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.* Before the Court is Union Pacific's Motion to Dismiss [11] under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies that motion.

**BACKGROUND**

As the Seventh Circuit recently noted, "[m]any courts have developed great familiarity with Illinois's privacy protection provisions in recent years" through the many cases in this circuit brought under the Illinois Biometric Information Privacy Act of 2008 ("BIPA"). *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). Plaintiffs bring their case under the "[l]ess known and litigated" Genetic Information Privacy Act of 1998, which, like the *Bridges* court, they refer to as "GIPA." *Id.*

The Illinois legislature enacted GIPA to combat public fear over the unlawful disclosure of genetic information and discrimination based on that information. *See* 410 ILCS 513/5. To that end, GIPA regulates the "use of genetic testing information by employers." 410 ILCS 513/25.

1

Plaintiffs allege that Union Pacific violated this section of GIPA by requiring them to disclose family medical history as a precondition of employment.

Plaintiffs' allegations are taken as true for the purpose of this opinion. Union Pacific is a Nebraska-based railroad incorporated in Delaware. Union Pacific operates railroads across the United States, including multiple facilities in Illinois. Plaintiffs were both employees of Union Pacific. They are both also Illinois citizens, though Moreno now resides in California.

Taylor applied for a position with Union Pacific's Train Crew around November 2022. She alleges that, during the hiring process, a Union Pacific employee required her to submit to a pre-employment physical. The physical was allegedly conducted by an Illinois medical provider employed by Union Pacific. During the physical, Taylor alleges, this provider solicited, requested, or required Taylor to disclose her family medical history—including whether her parents had cardiac health issues, cancer, diabetes, or other conditions—through verbal and written questions. Taylor was not directed by Union Pacific to withhold any genetic information. Taylor asserts that her hiring was conditioned upon her completing the physical, including by providing her family medical history. Union Pacific ultimately hired Taylor, and she worked in its facility in Dolton, Illinois, from January 2023 through March 2023.

Moreno applied for a position as a Customer Service Representative with Union Pacific around January 2020. She alleges that, during the hiring process, a Union Pacific employee required her to submit to a pre-employment physical. The physical was allegedly conducted by an Illinois medical provider employed by Union Pacific. During the physical, Moreno alleges, this provider solicited, requested, or required Moreno to disclose her family medical history—including whether her parents had cardiac health issues, cancer, diabetes, or other conditions—through verbal and written questions. Moreno was not directed by Union Pacific to withhold any genetic information. Moreno asserts that her hiring was conditioned upon her completing the physical, including by

2

providing her family medical history. Union Pacific ultimately hired Moreno, and she worked in its facility in Dolton, Illinois, from January 2020 through August 2020.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all of the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). To survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

  1. **"Aggrieved" Persons Under GIPA**

GIPA provides a private right of action to "[a]ny person ***aggrieved by*** a violation of this Act." 410 ILCS 513/40(a) (emphasis added). Union Pacific argues that Plaintiffs fail to state a claim under GIPA because they fail to plausibly allege that they were "aggrieved by" Union Pacific's allegedly wrongful conduct.

To determine what it means to be "aggrieved by" a GIPA violation, this Court must attempt to ascertain how the highest state court would rule on the issue. *See Allstate Ins. Co. v, Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Based on the parties' briefing and this Court's research, however, it appears that no Illinois court has addressed this issue. Therefore, the Court must try to predict how the issue would be decided "by [the Illinois Supreme Court] if the present case were before it

3

now." *Id.* Both parties identify BIPA as an Illinois statute that may aid in this analysis given its identical relevant language and similar remedial purpose. *Compare* 740 ILCS 14/20 ("Any person aggrieved by a violation of [BIPA] shall have a right of action ... against an offending party."), *with* 410 ILCS 513/40(a) ("Any person aggrieved by a violation of [GIPA] shall have a right of action ... against an offending party.").

The Illinois Supreme Court has addressed BIPA on numerous occasions, including on the issue that is now before this Court. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 1, 129 N.E.3d 1197, 1200 (addressing the "central issue" of "whether one qualifies as an 'aggrieved' person [under BIPA] if he or she has not alleged some actual injury or adverse effect, beyond violation of his or her rights under the statute"); *id.* at 1207 (holding that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [BIPA], in order to qualify as an 'aggrieved' person"). The only other federal court yet to address this issue likewise considered BIPA. It applied "the definition of 'aggrieved person' used by the *Rosenbach* court to GIPA." *Bridges v. Blackstone Grp., Inc.*, No. 21-CV-1091-DWD, 2022 WL 2643968, at *3 (S.D. Ill. July 8, 2022), *aff'd sub nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023).

This Court agrees that the Illinois Supreme Court would likely apply its *Rosenbach* reasoning to GIPA. Union Pacific's primary argument to the contrary misreads GIPA. Union Pacific attempts to distinguish GIPA from BIPA by arguing that GIPA has a narrower purpose "to prevent employment discrimination based on genetic information." (Dkt. 12 at 7.) But GIPA is not only an anti-discrimination statute. It is also intended to "require or promote voluntary and confidential use of genetic testing information," and to prevent genetic information from being "disclosed without consent." 410 ILCS 513/5(2). To that end, the section at issue here protects against a form of involuntary disclosure by prohibiting employers from merely "solicit[ing], request[ing], or requir[ing]" the "genetic information of a person … as a condition of employment [or]

4

preemployment application." 410 ILCS 513/25(c)(1). GIPA gives individuals certain rights to privacy over their genetic information beyond simply prohibiting its misuse. *See also* 410 ILCS 513/30(a) ("No person may disclose or be compelled to disclose … the results of a genetic test in a manner that permits identification of the subject of the test," except in enumerated circumstances).

The *Rosenbach* court took issue with characterizing a statutory BIPA violation with no allegation of actual harm as "merely technical in nature." 129 N.E.3d at 1206. The court explained that such a characterization "misapprehends the nature of the harm our legislature is attempting to combat through this legislation." *Id.* By violating BIPA's statutory provisions, a defendant intrudes on an individual's statutorily created "right to control their biometric information," which is not a mere technicality but a "real and significant" injury. *Id.* GIPA provides the same kind of privacy right by prohibiting employers from soliciting genetic information as a condition of employment. 410 ILCS 513/20. The *Rosenbach* court's logic applies the same. Therefore, by alleging that Union Pacific requested or solicited their genetic information as a condition of employment, Plaintiffs have adequately alleged that they are "aggrieved" under GIPA.

Still, even if Plaintiffs are "aggrieved" under Illinois law, the Court must satisfy itself that they have Article III standing. *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018) ("[s]tanding is an element of subject-matter jurisdiction in a federal civil action"); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) ("Whether raised by the parties or not, a court must assure itself that the plaintiff has standing, such that there exists a case or controversy as required by Article III of the Constitution."). Relevant here, "the plaintiffs must have suffered a concrete injury in order to allege standing as a constitutional matter." *Id.* at 589 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016)).

The Seventh Circuit has addressed this issue in the BIPA context. *See, e.g.*, *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30,

2020); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021), *certified question answered*, 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023). In *Bryant*, the Seventh Circuit held that a BIPA plaintiff "satisfied the injury-in-fact requirement of Article III" by alleging that the defendant failed to provide notice and obtain consent before collecting the plaintiff's biometric information. 958 F.3d at 624. The court first compared the claim to an action for trespass, explaining that collecting biometric information in violation of BIPA "was no bare procedural violation; it was an invasion of [the plaintiff's] private domain, much like an act of trespass would be." *Id.* The court came to the same conclusion analyzing the case "as a type of informational injury." *Id.*

GIPA Section 25(c)(1) creates a similar kind of "private domain" (genetic information) and prohibits a similar kind of "trespass" (an employer's solicitation of genetic information as a condition of employment). The Court need not comment on any other sections of GIPA. Plaintiffs allege that Union Pacific intruded into their private domain by improperly requesting their genetic information as a condition of employment. Under the GIPA section before the Court, Plaintiffs have adequately alleged a concrete and particularized harm sufficient to support Article III standing.

**2. Family Medical History as "Genetic Information"**

Plaintiffs allege that Union Pacific requested their family medical history, including family history of "cardiac health, cancer, and diabetes, among other conditions," as a precondition of employment. (Dkt. 1-1 ¶¶ 27–30, 39–42.) Union Pacific argues that this kind of medical history does not constitute GIPA-protected "genetic information" because "[t]o be 'genetic information,' the employer needs to use the information as such." (Dkt. 12 at 7.) The Court disagrees.

GIPA regulates the use, disclosure, and acquisition of "genetic information." *See* 410 ILCS 513/1 *et seq.* Relevant here, GIPA Section 25(c)(1) prohibits employers from "solicit[ing], request[ing], or requir[ing]" the "genetic information of a person … as a condition of employment

6

[or] preemployment application." 410 ILCS 513/25(c)(1). "Genetic information" under GIPA has the same meaning as "genetic information" under the HIPAA Privacy Rule—that is, GIPA adopts the definition of "genetic information" from 45 CFR § 160.103. *See* 410 ILCS 513/10. Subject to additional provisions not applicable here, "genetic information" therefore means: "(i) The individual's genetic tests; (ii) The genetic tests of family members of the individual; (iii) The manifestation of a disease or disorder in family members of such individual; or (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual." 45 CFR § 160.103.

Neither party briefed any case law interpreting the relevant provision of GIPA. This Court also did not discover any such cases in its own research. Given the lack of available GIPA cases, the parties turn to cases addressing the federal Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, which in some instances uses terms identical to those used in GIPA. *Compare* 42 U.S.C. § 2000ff(4)(A)(iii) (defining "genetic information" to include "the manifestation of a disease or disorder in family members of such individual"), *with* 45 C.F.R. § 160.103 (same). GIPA also references GINA, requiring that "[a]n employer … shall treat genetic testing and genetic information in such a manner that is consistent with … the Genetic Information Nondiscrimination Act of 2008." 410 ILCS 513/25(a). Because of the statutes' parallel language, and the parallel intentions expressed by the Illinois legislature, the Court will look to interpretations of GINA as an aid to interpreting GIPA.

There is a consistent rule expressed or implied in GINA cases: GINA's term "manifestation of a disease or disorder in an individual's family members" is limited to family members' diseases or disorders that suggest another family member's genetic predisposition to the condition. *Compare Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-CV-00964-CMA-NYW, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022) (plaintiff's father's COVID-19 diagnosis is not "genetic information" because it does

7

not have a genetic predisposition), *and Poore v. Peterbilt of Bristol, L.L.C.*, 852 F. Supp. 2d 727, 731 (W.D. Va. 2012) (plaintiff's wife's diagnosis of multiple sclerosis is not "genetic information" because it has no predictive value about plaintiff's propensity to contract the disease), *and Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *11 (N.D. Ala. Sept. 26, 2013) (plaintiff's mother's AIDs diagnosis is not "genetic information" because "[a]ny chance [plaintiff] had of acquiring HIV from her mother ended with Plaintiff's infancy"), *with Lee v. City of Moraine Fire Dep't*, No. 3:13-CV-222, 2015 WL 914440, at *11 (S.D. Ohio Mar. 3, 2015) ("In violation of 42 U.S.C. § 2000ff(4)(A)(iii), [the employer-defendant's agent] asked, 'Is there a family history of heart disease with your parents or siblings?'"), *and Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *16 (N.D. Ala. July 26, 2022) (GINA violation where employer asked "job candidates whether their grandparents, parents, or children had significant medical problems").

The EEOC's guidance further supports the rule synthesized in these cases. It clarifies that "GINA is intended to prevent discrimination based on concerns that genetic information about an individual suggests an increased risk of, or predisposition to, acquiring a condition in the future." *See* EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008, *available at* https://www.eeoc.gov/regulations-related-genetic-discrimination. This guidance makes clearer that GINA is concerned only with a family's potentially heritable "diseases or disorders."

Such an interpretation is consistent with GIPA's identical language. GIPA does not define "disease or disorder." Although the Court must start with GIPA's plain language, the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Saint Anthony Hosp. v. Whitehorn*, 100 F.4th 767, 784 (7th Cir. 2024). Statutory terms must therefore be read in context and, if possible, to ensure statutory coherence and consistency. *Id.* The term at issue here (that is, "The manifestation of a *disease or disorder* in family members of such individual")

8

appears in a section defining "genetic information," and is surrounded by three other subsections that all have to do with genetic tests or services. *See* 45 C.F.R. § 160.103. GIPA's purpose is not to regulate medical information generally, but to facilitate and regulate "genetic testing," which entails "analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes." 410 ILCS 510/5; 45 C.F.R. § 160.103.

In this context, "disease or disorder" cannot take on its broadest possible meaning. A family member's viral infection or broken bone might in some sense be considered a "disease or disorder," but such medical conditions are generally not connected with the kind of genetic information GIPA is meant to regulate; they shed no light on another family member's propensity for those conditions. The Court thus interprets "[t]he manifestation of a disease or disorder in family members of such individual," as used in GIPA, to be limited to family members' "diseases or disorders" suggesting an individual's genetic predisposition.

Union Pacific cites *Allen v. Verizon Wireless*, No. 3:12-CV-482 JCH, 2013 WL 2467923, at *23 (D. Conn. June 6, 2013), to attempt to expand the definition of "genetic information" to include the employer's intended use of the information. (*See* Dkt. 12 at 7.) Specifically, Union Pacific relies on the *Allen* court's holding that "evidence of a family member's disease diagnosis … is not considered 'genetic information' if it is taken into account only with respect to the individual in which such disease or disorder occurs and not as genetic information with respect to any other individual." 2013 WL 2467923, at *23 (citation and internal quotation marks omitted). That holding, however, is not binding on this Court, and the Court does not find it persuasive.

Union Pacific and the *Allen* court improperly conflate the *definition* of "genetic information" with certain prohibited conduct related to "genetic information." GIPA and GINA prohibit all kinds of conduct related to genetic information, including soliciting it as a condition of employment, *see, e.g.*, 410 ILCS 513/25(c)(1), and using it to "limit, segregate, or classify employees" in any way

9

that would adversely affect them, *see, e.g.*, 410 ILCS 513/25(c)(3). GIPA therefore sensibly defines "genetic information" before providing what employers can and cannot do with it. *See* 410 ILCS 513/10. That definition is based only on what kind of information is "genetic information," not what it might be used for. *See* 45 C.F.R. § 160.103 (in relevant part, "[g]enetic information means … with respect to an individual, information about … [t]he manifestation of a disease or disorder in family members of such individual").

In this case, Plaintiffs allege that Union Pacific solicited or requested their family histories with "cardiac health, cancer, and diabetes, among other conditions." As the cases above demonstrate, the manifestation of these kinds of diseases, unlike the flu or a broken arm, might suggest Plaintiffs' own predispositions to contract them. Therefore, at this juncture, Plaintiffs have adequately alleged that the information at issue is "genetic information" under GIPA.

### 3. Inadvertent Disclosures Under GIPA

GIPA Section 25(g) provides one of the many exceptions to Section 25's general requirements: "inadvertently requesting family medical history by an employer, employment agency, labor organization, and licensing agency does not violate this Act." 410 ILCS 513/25(g). GIPA deems conduct covered by Section 25(g), as well as Sections 25(e)-(i), to be "lawful acquisition of genetic testing or genetic information." 410 ILCS 513/25(j). Union Pacific argues that Plaintiffs' allegations fall within this "inadvertent request" exception, and that Plaintiffs thus fail to state a claim.

In response, Plaintiffs raise a threshold issue by arguing that "inadvertent disclosure" is an affirmative defense under GIPA. Plaintiffs ordinarily do not need to "anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citation omitted). Affirmative defenses "limit[] or excuse[] a defendant's liability even if the plaintiff establishes a *prima facie* case." *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016) (quoting

10

*Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n. 9 (7th Cir. 2005)). Where a statute's "exemptions [are] laid out apart from the prohibitions" courts often consider those exemptions affirmative defenses. *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 91, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008). That is because, generally, "[w]hen a proviso … carves an exception out of the body of a statute or contract those who set up such exception must prove it." *Id.* (collecting cases).

In *Meacham*, the Supreme Court applied this principle to the Age Discrimination in Employment Act ("ADEA"). The Court noted that "[t]he ADEA's general prohibitions against age discrimination, 29 U.S.C. §§ 623(a)-(c), (e), are subject to a separate provision, § 623(f), creating exemptions for employer practices 'otherwise prohibited under subsections (a), (b), (c), or (e).'" *Id.* Section 623(f) of the ADEA describes these exemptions as "lawful practices," providing that "[i]t shall not be unlawful for an employer" to take certain enumerated actions. 29 U.S.C. § 623(f). GIPA's structure is quite similar. Section 25 of GIPA provides general rules and prohibitions in subsections (a)–(d), then describes more specific circumstances that are excepted from these general prohibitions in subsections (e)–(i). *See, e.g.*, 410 ILCS 513/25(f) (permitting genetic testing of an employee who "provides written authorization" to take such a test "for the purpose of initiating a workers' compensation claim"). Applying *Meacham*'s reasoning, the Court holds that the "inadvertent request" exception under GIPA Section 25(g) is an affirmative defense.

But even if it were not, Plaintiffs have adequately pled that Union Pacific's request was not inadvertent. As Union Pacific points out, and as described above, GIPA's language frequently overlaps with GINA. That is so here, where GINA provides that it is "an unlawful employment practice for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee except-- (1) where an employer inadvertently requests or requires family medical history of the employee or family member of the employee." 42

11

U.S.C. § 2000ff-1(b). Federal regulations clarify that "[i]f a covered entity acquires genetic information in response to a lawful request for medical information, the acquisition of genetic information will not generally be considered inadvertent unless the covered entity directs the individual and/or health care provider from whom it requested medical information … not to provide genetic information." 29 C.F.R. § 1635.8(b)(1)(i)(A). The exceptions to this general rule are limited, such as when "an overly broad response is received in response to a tailored request", *id.* § 1635.8(b)(1)(i)(C); the request is made under certain employment laws, *id.* § 1635.8(b)(1)(i)(D); or the disclosure is made in some kind of accidental communication, like an overheard conversation, *id.* § 1635.8(b)(1)(ii).

Here, Union Pacific argues that "Plaintiffs assume that discussion of family medical history includes 'diseases or disorders with genetic predispositions' … but alleges nothing more than interactions during which family medical history was allegedly discussed." (Dkt. 12 at 6.) But Plaintiffs allege much more. They allege that, during the hiring process, a Union Pacific employee required them to submit to a preemployment physical with a Union Pacific-employed medical provider. (*See* Dkt. 1-1 at ¶¶ 29–32, 41–44.) During that examination, the Union Pacific medical provider allegedly asked about family medical history, including cardiac health, cancer, and diabetes, through written and verbal questions. (*Id.*) At this stage, that is enough to allege that Union Pacific's request or solicitation was not inadvertent. The Court therefore rejects Union Pacific's "inadvertent request" argument.

4. **The Use of Genetic Information as a "Means of Discrimination"**

Union Pacific next contends that "Plaintiffs here simply do not and cannot allege -- on behalf of themselves or the putative class -- that their 'genetic information' was used by Union Pacific as a means of discrimination in employment." (Dkt. 12 at 4.) But that is not how the Court or Plaintiffs understand Plaintiffs' legal theory. Although Plaintiffs include allegations that Union

12

Pacific misused genetic information, *see, e.g.*, Dkt. 1-1 at ¶ 52, their sole legal theory is that Union Pacific "solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process." (*Id.* at Count I.) In other words, Plaintiffs' only GIPA claim is that Union Pacific violated GIPA Section 25(c)(1). *See* 410 ILCS 513/25(c)(1). Plaintiffs' proposed class definition also uses this narrow theory of liability: "All individuals in Illinois … from whom Defendant … requested and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment." (Dkt. 1-1 at ¶ 57.)

Union Pacific does not cite or address GIPA Section 25(c)(1) in initially making this argument. (*See* Dkt. 12 at 4-5.) Section 25(c)(1), however, does not include the "misuse" requirement that Union Pacific asks the Court to read in. It prohibits "solicit[ing], request[ing], require[ing] or purchas[ing]" genetic information as a condition of employment and preemployment application, 410 ILCS 513/25(c)(1), but it says nothing about the use of that information. Other provisions in Section 25 explicitly address "using" genetic information to discriminate. *See* 410 ILCS 513/25(e). And to the extent that Union Pacific uses the term "misuse" more broadly, Plaintiffs' allegations clearly fall within the broad definition by alleging that Union Pacific "misused" genetic information by requesting its disclosure as a condition of employment.

In reply, Union Pacific argues that Plaintiffs improperly read Section 25(c)(1) out of context. Section 25(c)(1), Union Pacific notes, (1) appears in a section titled "*Use* of genetic testing information by employers" and (2) is surrounded by three other subsections that all address some form of discrimination or misuse connected by the term "and." Union Pacific argues that the term "and" shows the legislature did not intend to create four separate causes of action. The Court disagrees with both points.

13

First, Section 25(c)(1)'s language is plain and unambiguous, and it is not made ambiguous by a broadly worded section title. Conditioning employment or preemployment application on the receipt of genetic information is, broadly speaking, a kind of "use" of genetic information. And that is what section titles do; they speak broadly. Indeed, the title of Section 25 itself must be read in context. GIPA is meant to regulate the confidentiality and nondisclosure of genetic information along with genetic-based discrimination. *See* 410 ILCS 14/5. The Court's "inquiry must cease if the statutory language is unambiguous," as Section 25(c)(1)'s is, "and the statutory scheme is coherent and consistent," as GIPA is here. *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711 (7th Cir. 2005) (citation and quotation marks omitted).

Second, Union Pacific ignores that Section 25(c) prohibits employers from "directly or indirectly do[ing] *any* of the following" enumerated acts. 410 ILCS 513/25(c) (emphasis added). The term "any" shows that the legislature intended for each of the actions that followed to be illegal. Moreover, it would be incoherent to read Section 25(c) as providing only a single cause of action. One subsection prohibits employers from "retaliat[ing] … against any person alleging a violation of this Act." 410 ILCS 513/25(c)(4). If Section 25(c) does not provide separate causes of action, then a plaintiff would only have a cause of action for discrimination *after* being retaliated against for filing a cause of action for discrimination. That is nonsensical.

The Court therefore rejects Union Pacific's argument that Plaintiffs inadequately alleged "misuse" of genetic information.

**5. GIPA's Statute of Limitations**

GIPA does not provide its own statute of limitations. The Court is therefore "tasked with determining which limitations period [under Illinois law] controls claims under [GIPA]" and "must focus [its] inquiry on the nature of the liability." *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 18, 216 N.E.3d 845, 849 (Ill. 2023) (citing *Armstrong v. Guigler*, 174 Ill. 2d 281, 291, 220 Ill.Dec. 378,

14

673 N.E.2d 290 (Ill. 1996)). The parties dispute the applicable limitations period for claims under Section 25(c)(1), but they agree that Illinois's Code of Civil Procedure controls. *See* 735 ILCS 5/13-201 *et seq*.

Union Pacific argues that the one-year limitations period in 735 ILCS 5/13-201 should apply because Section 25(c)(1) prohibits the kind of "publication of matter violating the right of privacy" that Section 5/13-201 covers. Alternatively, Union Pacific argues that the two-year limitations period in 735 ILCS 5/13-202 should apply because a claim under Section 25(c)(1) is a kind of "personal injury claim." Union Pacific argues that under either the one- or two-year limitations period Plaintiff Moreno's claim is time-barred because it accrued around January 2020.

Plaintiffs argue, in response, that Section 5/13-205's five-year limitations "catchall" provision should apply because the kinds of claims actionable under GIPA are not addressed by the other statutory sections. *See* 735 ILCS 5/13-205 ("all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). Plaintiffs rely on the Illinois Supreme Court's decision applying this five-year catchall to all BIPA claims, *Tims*, 216 N.E.3d at 854, and a recent Illinois circuit court decision applying the five-year general limitations period to GIPA. *See Paradies v. Alden Estates-Courts of Huntley, Inc.*, 2023-CH-01311 (Nov. 8, 2023).

The Court agrees that the five-year limitations period of Section 13-205 applies to claims under GIPA Section 25(c)(1). The *Tims* court's analysis provides guidance. It held that "section 15(a), 15(b), and 15(e) of [BIPA] contain no words that could be defined as involving publication" such that Section 13-201's one-year limitations period might apply. 216 N.E.3d at 852. In contrast, the court "agree[d] that an argument can be made that the words 'sell,' 'lease,' 'trade,' 'disclose,' 'redisclose,' and 'disseminate' in subsections (c) and (d) could be defined as involving publication," but nonetheless applied Section 13-205's five-year limitations period based on the purpose of the statute and to "ensur[e] certainty and predictability." *Id.*

15

GIPA Section 25(c)(1)'s prohibitions are much closer to BIPA Section 15(b) than BIPA Section 15(c) or 15(d)—they do not involve a "publication" as defined by the Illinois Supreme Court. BIPA Section 15(b) bars entities from "collect[ing], captur[ing], purchas[ing], receiv[ing] through trade, or otherwise obtain[ing]" a person's biometric data. 740 ILCS 14/15(b). GIPA Section 25(c)(1) uses similar verbs. Employers shall not "solicit, request, require or purchase" genetic information as a condition of employment. 410 ILCS 513/25(c)(1). These terms are distinct from the arguably publication-related terms in other BIPA sections like "disclose" or "disseminate." For the same reasons as the Illinois Supreme Court in *Tims*, then, this Court finds the five-year catchall more appropriate to apply to GIPA Section 25(c)(1).

The two-year limitations period under Section 5/13-202 is also not a good fit. Relevant here, Section 5/13-202 applies to "[a]ctions for damages for an injury to the person" or "for a statutory penalty." Union Pacific does not explain how a violation of statutory privacy rights amounts to "an injury to the person" as used in Section 5/13-202. In fact, that position is contrary to the argument that Plaintiffs are not "aggrieved" by a purely statutory injury. And this Court agrees that GIPA, like BIPA, "is not a penal statute, even if it provides for statutory damages." *Burlinski v. Top Golf USA Inc.*, No. 19-CV-06700, 2020 WL 5253150, at *7 (N.D. Ill. Sept. 3, 2020) (Chang, J.). Section 5/13-202's limitations period does not apply to GIPA Section 25(c)(1).[1]

Because no party currently disputes that Plaintiff Moreno's claims are timely under the five-year limitations period, the Court denies this aspect of Union Pacific's motion to dismiss.

---

[1] The Illinois Supreme Court has explained good reasons why Illinois courts should interpret statutes with numerous operative subsections to have a uniform statute of limitations. *See Tims*, 216 N.E.3d 845, 849 (Ill. 2023) (holding that BIPA has a uniform 5-year limitations period). The Court notes, however, that GIPA is a more complex statute than BIPA, with many more sections addressing varied prohibitions and requirements. The Court therefore limits its analysis today to the only section of GIPA before it, Section 25(c)(1).

6. **Pleading Mental State Under GIPA**

The damages available under GIPA vary based on the defendant's mental state. A "party who negligently violates a provision of [GIPA]" may be subjected to "liquidated damages of $2,500 or actual damages, whichever is greater." 410 ILCS 513/40(a)(1). In contrast, a "party who intentionally or recklessly violates a provision of [GIPA]" may be subjected to "liquidated damages of $15,000 or actual damages, whichever is greater." 410 ILCS 513/40(a)(2). Union Pacific argues that Plaintiffs have not plausibly alleged it acted negligently, recklessly, or intentionally.

Because no GIPA cases address this issue, both parties rely on cases in the BIPA context. BIPA's damages provision is nearly identical to GIPA's. *Compare* 740 ILCS 14/20, *with* 410 ILCS 513/40. The development of the BIPA case law on pleading mental state was unclear. On one hand, courts held that "intentional or reckless" was an element of a BIPA claim that had to be pleaded with sufficient detail. *See, e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) (Aspen, J.); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (Coleman, J.); *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.") (citation omitted). On the other hand, courts (often the same ones), held that "intentional or reckless" claims were not really "claims" at all, but "demands for relief" for which a plaintiff "need not plead facts … that show his entitlement." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874 (N.D. Ill. 2022) (Aspen, J.); *see also Mahmood*, 2022 WL 3684636, at *3.

In *Sosa*, the court addressed these contrary conclusions and was "convinced [based on several recently issued decisions] that [its later] conclusion [was] the correct one." *Id.* at 874 n.7. The court reasoned that "requests for liquidated damages [under BIPA] are requests for a particular type of remedy should [a plaintiff] prevail on his underlying BIPA claim." *Id.* at 874 (citations omitted). In other words, BIPA's remedies are distinct from the underlying claims that a defendant

17

violated one of BIPA's provisions. *Id.* The court held that Rule 8 does not require plaintiffs to plead facts showing their entitlement to precise forms of available relief. *Id.* (collecting cases).

This Court agreed with *Sosa's* reasoning in *Mahmood*, 2022 WL 3684636, at *3. And the Court finds that the relevant provisions of GIPA require the same conclusion in this case. Plaintiffs allege that Union Pacific violated GIPA Section 25(c)(1), which does not limit actionable claims to negligent, intentional, or reckless ones. *See* 410 ILCS 513/25. Instead, Plaintiffs "may recover" damages if they are the "prevailing party" and if the defendant negligently, "intentionally or recklessly violate[d]" GIPA. 410 ILCS 513/40. As with BIPA, "[a] request for enhanced damages is a demand for relief, not part of a [GIPA] claim, therefore, [Plaintiffs] need not allege facts to show [they are] entitled to this enhanced relief." *Mahmood*, 2022 WL 3684636, at *3. The Court denies this aspect of Union Pacific's motion to dismiss.

**CONCLUSION**

For these reasons, the Court denies Union Pacific's Motion to Dismiss [11].

**IT IS SO ORDERED.**

Date: 7/16/2024

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge