## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS DIVISION

| | |
|---|---|
| Candace Taylor and Carla Moreno, Individually and on behalf of themselves and all other similarly situated, | |
| Plaintiffs, | Case No.: 23-cv-16404 |
| vs. | Judge Sharon Johnson Coleman |
| Union Pacific Railroad Company, | |
| Defendant. | |

## DEFENDANT UNION PACIFIC RAILROAD COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLASS ACTION COMPLAINT

Defendant, Union Pacific Railroad Company ("Union Pacific"), by and through its undersigned counsel, and for its Answer and Affirmative Defenses to Plaintiffs' Class Action Complaint, states as follows:

## NATURE OF THE ACTION

1. Unlocking the human genetic code came with it the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For the first time, women can now learn whether they are predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 1 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

2. However, all of this information can only be obtained if people are willing to allow sharing of genetic information, and that is only possible if people know that their genetic

information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 2 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

3.     The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

**ANSWER:** **The allegations of paragraph 3 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

4.     Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used by employers to discriminate against them.

**ANSWER:** **The allegations of paragraph 4 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

5.     Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

**ANSWER:**    **The allegations of paragraph 5 state a legal conclusion regarding GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA, and further denies that it violated GIPA, or any other law.**

6.    To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

**ANSWER:**    **The allegations of paragraph 6 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

7.    Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

**ANSWER:**    **Union Pacific is without information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 7. To the extent this paragraph contains allegations directed at Union Pacific's conduct, Union Pacific denies that it violated GIPA, or any other law.**

8.    Defendant chose to repeatedly disregard Illinois' genetic privacy laws by asking its employees to provide genetic information in the form of family medical history to assist the company in making employment decisions.

**ANSWER:**    **Union Pacific denies the allegations of paragraph 8.**

9.    Accordingly, Plaintiffs seek on behalf of themselves, and all of Defendant's other similarly situated employees in the state, an order: (i) requiring Defendant to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the members of the proposed Class.

**ANSWER:    Union Pacific admits that Plaintiffs purport to bring this case on behalf of themselves and similarly situated employees of Union Pacific in Illinois, but denies that Plaintiffs are entitled to any relief, denies that class action treatment is proper in this case, and denies that it engaged in any wrongdoing whatsoever.**

## PARTIES

10.    Plaintiff Candace Taylor is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Taylor currently resides in Chicago, Illinois.

**ANSWER:    Union Pacific admits only that Plaintiff Taylor was employed by Union Pacific for a short time, but lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 10 and, therefore, neither admits nor denies those allegations, but demands strict proof thereof.**

11.    Plaintiff Carla Moreno is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Taylor currently resides in Paso Robles, California.

**ANSWER:    Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 11 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

12.    Defendant is a Delaware corporation with its headquarters located in Omaha, Nebraska. The company conducts business throughout this County, the State of Illinois, and the United States.

**ANSWER:    Union Pacific admits that it is a Delaware corporation with its headquarters in Omaha, Nebraska and that it conducts business in Cook County, Illinois.**

13. Defendant is a major employer in Illinois, with over 1,000 employees in the state. Defendant operates and manages thousands of miles of railroads across the United States, including Illinois. Defendant operates multiple facilities within the state, including terminals for intermodal and other freight at 350 E. Sibley Boulevard, Dolton, IL 60419 (the **"Dolton Facility"**) and 301 W. Lake Street, Northlake, IL 60164 (the "**Chicago Facility**").

**ANSWER:** Union Pacific admits the allegations of paragraph 13.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

**ANSWER:** **Union Pacific admits only that jurisdiction is proper in the Northern District of Illinois and that it conducts business in Illinois, but denies the remaining allegations of paragraph 14.**

15. Venue is proper in Cook County because Defendant operates throughout this County and "resides" in Cook County within the meaning of 735 ILCS 5/2-102(a).

**ANSWER:** **Union Pacific denies the allegations of paragraph 15.**

## ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")

16. During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great

5

achievements of human history, and said: "Today we are learning the language with which God created life[.]"[1]

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 16 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

17. However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian science fiction movie *Gattaca,* attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e., genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information.[2]

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 17 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

18. Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to protect an individual from their genetic information (such as family medical history)

---

[1] *Scientists Complete Rough Draft of Human Genome (N.Y.* Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23.

[2] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15, 2022) available at https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html.

being used against them in a discriminatory manner. Limiting the use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

**ANSWER:** **The allegations of paragraph 18 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

19.     The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 110 P.L. 233; *see also* 42 U.S.C. § 2000ff. The 2008 amendments to GIPA sought to further prohibit discriminatory practices of employers through the use of genetic information of employees, including such employees' family medical history.

**ANSWER:** **The allegations of paragraph 19 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

20.     During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the importance of safeguarding family medical history due to the fact that it is akin to knowledge of genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in `96 or `97, I had a third generation ovarian cancer survivor that came to me with this issue. ... If a woman has ... the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life ... it's important that we help people be able to know that information and know they won't be discriminated against in their employment .... Quite honestly, with genetic information we have today, we could identify a pool of people that ... no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

7

**ANSWER:** **The allegations of paragraph 20 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

21. To accomplish the Illinois Legislature's goal of ensuring that genetic information is not used to discriminate against employees, GIPA adopted Congress' definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103.

**ANSWER:** **The allegations of paragraph 21 state a legal conclusion regarding the purpose of GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA or its purpose, and further denies that it violated GIPA, or any other law.**

22. GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer ... shall not directly or indirectly do any of the following:

    (1)    solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, ... as a condition of employment, preemployment application...;

    (2)    affect the terms, conditions, or privileges of employment, preemployment application, ... ... or terminate the employment, ... of any person because of genetic testing or genetic information with respect to the employee or family member...;

    (3)    limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, ...; and

(4)     retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c). Nor may an employer or prospective employer enter into an agreement with a person to take a genetic test. 410 ILCS 513/25(d).

**ANSWER:**    **The allegations of paragraph 22 state a legal conclusion regarding GIPA's statutory provisions. Union Pacific denies any allegations not consistent with GIPA and further denies that it violated GIPA, or any other law.**

23.    Even if an employer otherwise obtains genetic information lawfully, it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j).

**ANSWER:**    **The allegations of paragraph 23 state a legal conclusion regarding GIPA's statutory provisions. Union Pacific denies any allegations not consistent with GIPA and further denies that it violated GIPA, or any other law.**

24.    In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action ... against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful violation; (b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the ... court may deem appropriate." *Id.*

**ANSWER:**    **The allegations of paragraph 24 state a legal conclusion regarding GIPA's statutory provisions. Union Pacific denies any allegations not consistent with GIPA and further denies that it violated GIPA, or any other law.**

25.    Plaintiffs are not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the injuries

caused by Defendant. *See Rosenbach v. Six Flags Ent. Corp*., 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act (**"BIPA"**)] in order to qualify as an `aggrieved person' under BIPA); *see also Bridges v. Blackstone Grp., Inc*., 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA).

**ANSWER:** **The allegations of paragraph 25 state a legal conclusion regarding GIPA's statutory provisions and case law. Union Pacific denies any allegations not consistent with GIPA and the cases cited in paragraph 25, and further denies that it violated GIPA, or any other law.**

26.     Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

**ANSWER:** **The allegations of paragraph 26 state a legal conclusion regarding GIPA's statutory provisions. Union Pacific denies any allegations not consistent with GIPA and further denies that it violated GIPA, or any other law.**

## PLAINTIFFS' SPECIFIC ALLEGATIONS

### PLAINTIFF CANDACE TAYLOR

27.     Plaintiff Candace Taylor submitted an application to Defendant for the position of Train Crew in or around November 2022.

**ANSWER:** **Union Pacific admits the allegations of paragraph 27.**

28.     In or around November 2022, during the application and hiring process, Defendant directly or indirectly solicited, requested, or required Ms. Taylor to disclose her genetic information as a condition of employment.

**ANSWER:**     Union Pacific denies the allegations of paragraph 28.

29.     Specifically, in or around November 2022, Ms. Taylor was instructed by an individual, who upon information and belief was an employee of Defendant at the time, to submit to a pre-employment physical as a requirement of the hiring process with Defendant. The physical was conducted in Illinois by a medical provider who, upon information and belief, was an employee of Defendant. During the physical, the provider conducting the physical solicited, requested, or required Ms. Taylor to disclose her family medical history verbally and on a written form.

**ANSWER:**     **Union Pacific admits only that, in or around November 2022, Plaintiff submitted to a medical exam as part of Union Pacific's post job offer process. Union Pacific denies the remaining allegations of paragraph 29.**

30.     During the physical, the provider gave Ms. Taylor a written questionnaire and requested Ms. Taylor to provide responses to the questions therein. The questionnaire asked Ms. Taylor to disclose whether various diseases or disorders with a genetic predisposition had manifested in her family members, including whether Ms. Taylor's parents had cardiac health, cancer, and diabetes, among other conditions.

**ANSWER:**     **Union Pacific admits only that Plaintiff completed a questionnaire as part of Union Pacific's post job offer process. Union Pacific denies the remaining allegations of paragraph 30.**

31.     After completing the paperwork, Ms. Taylor met with the provider one-on-one in a physical examination room within the provider's medical offices. During this examination, the provider tested Ms. Taylor's eyesight and the flexibility of various body parts. After completing the physical portions of the examination, the provider verbally asked Ms. Taylor questions about

her medical conditions and history. When asking these questions, the provider had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 31 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

32. Among other questions, the provider verbally asked Ms. Taylor to provide her family medical history. The provider listed various medical conditions including cardiac health, cancer, and diabetes, among other ailments, and asked Ms. Taylor to respond by stating whether Ms. Taylor had any of those conditions, or whether any family members on Ms. Taylor's maternal or paternal bloodlines had manifested these conditions.

**ANSWER:** **Upon information and belief, Union Pacific denies the allegations of paragraph 32.**

33. In response, Ms. Taylor disclosed genetic information, including her family members' medical histories. Ms. Taylor would not have volunteered her genetic information if the provider had not asked Ms. Taylor to do so.

**ANSWER:** **Upon information and belief, Union Pacific denies the allegations of paragraph 33.**

34. Ms. Taylor was not directed by Defendant, either verbally or in writing, to not disclose the solicited genetic information. Nor did Ms. Taylor provide prior, knowing, voluntary, and written authorization to Defendant for the use of her genetic information in furtherance of a workplace wellness program.

**ANSWER:** **Union Pacific denies the allegations of paragraph 34.**

35.    The physical was a condition of employment and/or preemployment application because Defendant required Ms. Taylor to attend this physical in order to be hired.

**ANSWER:    Union Pacific admits only that Plaintiff submitted to a medical exam as part of Union Pacific's post job offer process. Union Pacific denies that this requirement violated GIPA, or any other law.**

36.    Ms. Taylor was required to disclose her genetic information at the physical as a condition of employment with Defendant.

**ANSWER:    Union Pacific denies the allegations of paragraph 36.**

37.    Ms. Taylor's hiring was conditioned upon successful completion of the physical, which required her providing her genetic information to the provider.

**ANSWER:    Union Pacific denies the allegations of paragraph 37.**

38.    Ms. Taylor was hired by Defendant after completing all required steps in the hiring process. Ms. Taylor was employed by Defendant at the Dolton Facility from on or about January 2, 2023 through on or about March 15, 2023.

**ANSWER:    Union Pacific admits the allegations of paragraph 38.**

**PLAINTIFF CARLA MORENO**

39.    Plaintiff Carla Moreno submitted an application to Defendant for the position of Customer Service Representative in or around January 2020.

**ANSWER:    Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 39 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

40.    In or around January 2020, during the application and hiring process, Defendant directly or indirectly solicited, requested, or required Ms. Moreno to disclose her genetic information as a condition of employment.

**ANSWER:** **Union Pacific denies the allegations of paragraph 40.**

41.     Specifically, in or around January 2020, Ms. Moreno was instructed by an individual, who upon information and belief was an employee of Defendant at the time, to submit to a pre-employment physical as a requirement of the hiring process with Defendant. The physical was conducted in Illinois by a medical provider who, upon information and belief, was an employee of Defendant. During the physical, the provider conducting the physical solicited, requested, or required Ms. Moreno to disclose her family medical history verbally and on a written form.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 41 that Plaintiff submitted to a medical exam and, therefore, neither admits nor denies said allegations, but demands strict proof thereof. Union Pacific denies the remaining allegations of paragraph 41.**

42.     During the physical, the provider gave Ms. Moreno a written questionnaire and requested Ms. Moreno to provide responses to the questions therein. The questionnaire asked Ms. Moreno to disclose whether various diseases or disorders with a genetic predisposition had manifested in her family members, including whether Ms. Moreno's parents had cardiac health, cancer, and diabetes, among other conditions.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 42 that Plaintiff completed a questionnaire and, therefore, neither admits nor denies said allegations, but demands strict proof thereof. Union Pacific denies the remaining allegations of paragraph 42.**

43.     After completing the paperwork, Ms. Moreno met with the provider one-on-one in a physical examination room within the provider's medical offices. During this examination, the

provider tested Ms. Moreno's eyesight and the flexibility of various body parts. After completing the physical portions of the examination, the provider verbally asked Ms. Moreno questions about her medical conditions and history. When asking these questions, the provider had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 43 and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

44. Among other questions, the provider verbally asked Ms. Moreno to provide her family medical history. The provider listed various medical conditions including cardiac health, cancer, and diabetes, among other ailments, and asked Ms. Moreno to respond by stating whether Ms. Moreno had any of those conditions, or whether any family members on Ms. Moreno's maternal or paternal bloodlines had manifested these conditions.

**ANSWER:** **Upon information and belief, Union Pacific denies the allegations of paragraph 44.**

45. In response, Ms. Moreno disclosed genetic information, including her family members' medical histories. Ms. Moreno would not have volunteered her genetic information if the provider had not asked Ms. Moreno to do so.

**ANSWER:** **Upon information and belief, Union Pacific denies the allegations of paragraph 45.**

46. Ms. Moreno was not directed by Defendant, either verbally or in writing, to not disclose the solicited genetic information. Nor did Ms. Moreno provide prior, knowing, voluntary,

and written authorization to Defendant for the use of her genetic information in furtherance of a workplace wellness program.

**ANSWER:** **Union Pacific denies the allegations of paragraph 46.**

47. The physical was a condition of employment and/or preemployment application because Defendant required Ms. Moreno to attend this physical in order to be hired.

**ANSWER:** **Union Pacific lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 47 that Plaintiff submitted to a medical exam and, therefore, neither admits nor denies said allegations, but demands strict proof thereof.**

48. Ms. Moreno was required to disclose her genetic information at the physical as a condition of employment with Defendant.

**ANSWER:** **Union Pacific denies the allegations of paragraph 48.**

49. Ms. Moreno's hiring was conditioned upon successful completion of the physical, which required her providing her genetic information to the provider.

**ANSWER:** **Union Pacific denies the allegations of paragraph 49.**

50. Ms. Moreno was hired by Defendant after completing all required steps in the hiring process. Ms. Moreno was employed by Defendant at the Dolton Facility from on or about January 2, 2020 through on or about August 15, 2020.

**ANSWER:** **Union Pacific denies the allegations of paragraph 50.**

### **DEFENDANT VIOLATES GIPA AS A MATTER OF COURSE**

51. Based on Plaintiffs' experiences, they believe that, during the hiring process, Defendant asks employees and/or prospective employees to provide family medical histories as a condition of employment and/or as part of its hiring process.

**ANSWER:** **Union Pacific denies the allegations of paragraph 51.**

52.     Plaintiffs understand, on information and belief, that Defendant, or agents on its behalf, requests this family medical history information for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

**ANSWER:     Union Pacific denies the allegations of paragraph 52.**

53.     On information and belief, Defendant requests this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Defendant believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding.

**ANSWER:     Union Pacific denies the allegations of paragraph 53.**

54.     Defendant was or should have been aware of its obligations under GIPA. Nevertheless, Defendant intentionally and/or recklessly captured, collected, and/or retained Plaintiffs' genetic information in the form of their family medical history in violation of Illinois law.

**ANSWER:     Union Pacific denies the allegations of paragraph 54.**

55.     As a result, Defendant's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

**ANSWER:     Union Pacific denies the allegations of paragraph 55.**

## CLASS ACTION ALLEGATIONS

56.     **Proposed Class Definition:** Plaintiffs bring this action pursuant 735 ILCS 5/2-801 on behalf of themselves and the following class (the **"Class"**) of similarly situated individuals, defined as follows:

**ANSWER:** **Union Pacific admits that Plaintiffs purport to bring this case as a class action and seek to certify a class of individuals. Union Pacific denies that class action treatment is proper in this case and further states Plaintiffs will be unable to certify a class of similarly situated individuals. Union Pacific denies any remaining allegations of paragraph 56.**

57. The Class brought by Plaintiffs consists of:

> All individuals in Illinois, from the date within five years prior to the filing of this action, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment with Defendant.

Excluded from the Class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

**ANSWER:** **Union Pacific admits that Plaintiffs purport to bring this case as a class action and seek to certify a class of individuals. Union Pacific denies that class action treatment is proper in this case and further states Plaintiffs will be unable to certify a class of similarly situated individuals. Union Pacific denies any remaining allegations of paragraph 57.**

58. Plaintiffs reserve the right to modify this class definition as they obtain relevant information, including employment records, through discovery.

**ANSWER:** **The allegations of paragraph 58 state a legal conclusion regarding Plaintiff's purported "right." Union Pacific denies any allegations not consistent with GIPA or any other law and further denies that it violated GIPA, or any other law.**

59. **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but Defendant employs over 1,000 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class. It is further believed that there are at least 100 individuals that meet the class definition. Therefore, it is clear that individual

18

joiner in this case is impracticable. Proposed Class members can easily be identified through Defendant's employment records.

**ANSWER:** **Union Pacific denies the allegations of paragraph 59.**

60. **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the proposed Class members, and those questions predominate over any questions that may affect individual proposed Class members. Common questions include, but are not limited to, the following:

      a.     whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of prospective employees;

      b.     whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of existing employees;

      c.     whether Defendant obtained genetic information from Plaintiffs and the Class by asking for family medical history; and

      d.     whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA.

**ANSWER:** **Union Pacific denies the allegations of paragraph 60, including denial of sub-parts (a)-(d).**

61. **Typicality:** Plaintiffs' claims are typical of the claims of the proposed Class members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

**ANSWER:** **Union Pacific denies the allegations of paragraph 61.**

62. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex

litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

**ANSWER:** **Union Pacific denies the allegations of paragraph 62.**

63. **Superiority:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if proposed Class members were able or willing to pursue such individual litigation, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**ANSWER:** **Union Pacific denies the allegations of paragraph 63.**

**COUNT I**
**VIOLATION OF 410 ILCS 513/25**
**SOLICIT, REQUEST, AND/OR REQUIRE GENETIC INFORMATION OF A PERSON**
**OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR**
**PRE-EMPLOYMENT APPLICATION**

64. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:** **Union Pacific incorporates by reference and re-alleges its answers to the preceding paragraphs above as if fully set forth herein.**

65. Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

**ANSWER:** **Union Pacific admits only that it is a corporation that employs individuals in Illinois. The remaining allegations of paragraph 65 state a legal conclusion regarding GIPA**

and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA, and further denies that it violated GIPA, or any other law.

66.     Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

**ANSWER:**     **The allegations of paragraph 66 state a legal conclusion regarding GIPA and its statutory provisions. Union Pacific denies any allegations not consistent with GIPA, and further denies that it violated GIPA, or any other law.**

67.     Plaintiffs were individually asked to provide, and did provide, their family medical history as a condition of employment during the application and hiring process to work for Defendant.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 67.**

68.     Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process to work for Defendant.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 68.**

69.     Defendant directly solicited or requested Plaintiffs to disclose family medical histories during a pre-employment physical as a condition of employment during the application and hiring process to work for Defendant.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 69.**

70.     Defendant failed to direct Plaintiffs, either verbally or in writing, not to provide genetic information when requested to provide their family medical history.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 70.**

71.     Plaintiffs and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 71.**

72.     By indirectly or directly soliciting or requesting Plaintiffs and the proposed Class members to provide their genetic information as described herein, Defendant violated Plaintiffs' and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 72.**

73.     Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA, its actions in violating GIPA were willful.

**ANSWER:**     **Union Pacific denies the allegations of paragraph 73.**

74.     On behalf of themselves and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILLS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**ANSWER:** **Union Pacific admits that Plaintiffs purport to bring this case on behalf of themselves and a class. Union Pacific denies that Plaintiffs are entitled to any relief, denies that class action treatment is proper in this case, and denies that it engaged in any wrongdoing whatsoever.**

WHEREFORE, Defendant, Union Pacific Railroad Company ("Union Pacific"), respectfully requests that this Court enter judgment in its favor and against Plaintiffs, award Union Pacific its costs and fees in the full amount provided by law, and grant any such further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Without waiver to its denials and all other statements herein and elsewhere, Defendant, Union Pacific Railroad Company ("Union Pacific"), asserts the following affirmative defenses to Plaintiffs' Class Action Complaint:

### First Affirmative Defense
### (No Request for Genetic Information)

Union Pacific did not possess, solicit, require, or purchase genetic testing or genetic information of any kind within the meaning of GIPA and therefore compliance with GIPA was not required.

### Second Affirmative Defense
### (No Means of Discrimination)

To the extent any information possessed, released, solicited, required, or purchased by Union Pacific is deemed to constitute genetic testing or genetic information under GIPA, which Union Pacific denies, arguing in the alternative, no terms, conditions, or privileges of employment, including the employment itself, preemployment application, labor organization membership, or licensure, were affected or caused to be terminated because of genetic testing or genetic information under GIPA.

23

### Third Affirmative Defense
### (Inadvertent Exclusion)

To the extent any information was requested regarding family medical history of an employee or family member, which Union Pacific denies, arguing in the alternative, Union Pacific's request for such information was inadvertent and, therefore, does not violate GIPA. 410 ILCS 513/25(g).

### Fourth Affirmative Defense
### (Lack of Statutory and Article III Standing)

Plaintiffs' GIPA claim is barred in whole or in part because Plaintiffs and the putative class members lack statutory standing given that they are not "aggrieved" within the meaning of 410 ILCS 513/40(a). No "genetic information" of Plaintiffs or putative class members has been collected or compromised by a data breach or identity theft, otherwise misappropriated or misused, used for employment decisions, or used as a means of discrimination. Further, Plaintiffs and the putative class have not suffered any injury or incurred any harm that would entitle them to relief under GIPA, under the Illinois Constitution, or Article III of the United States Constitution.

### Fifth Affirmative Defense
### (Estoppel, Waiver, Consent, Ratification, and Acquiescence)

Plaintiffs' GIPA claim is barred in whole or in part under the doctrines of estoppel, waiver, consent, ratification, and/or acquiescence. To the extent the Court determines that GIPA applies, which Union Pacific denies, arguing in the alternative, Plaintiffs and the putative class members actually or constructively consented and voluntarily agreed, either expressly or impliedly, to providing genetic information, without threat, coercion or compulsion, as part of the bargained for exchange in order to obtain employment and be compensated.

**Sixth Affirmative Defense**
**(Good Faith and Substantial Compliance)**

Plaintiffs' GIPA claim is barred in whole or in part because Union Pacific's post job offer medical process and procedures do not request "genetic information" from individuals and, in fact, Union Pacific takes affirmative measures to advise individuals that they should not provide "genetic information." To the extent the Court determines that GIPA applies, which Union Pacific denies, arguing in the alternative, the claim is barred in whole or in part based on Union Pacific's good faith and reasonable interpretation of GIPA, substantial compliance therewith, and/or absence of any intentional, reckless or negligent violation of the statute.

**Seventh Affirmative Defense**
**(Laches)**

Plaintiffs' GIPA claim is barred in whole or in part by the doctrine of laches to the extent Plaintiffs and the putative class members unreasonably delayed before asserting their purported rights under the statute and, thereby, caused undue prejudice to Union Pacific.

**Eighth Affirmative Defense**
**(Statute of Limitations)**

Plaintiffs' GIPA claim is time-barred in whole or in part as to Plaintiffs or the putative class members by the applicable statute of limitations.

**Ninth Affirmative Defense**
**(Unenforceable Penalty)**

The prayer for relief is barred in whole or in part because Plaintiffs and the putative class members are not entitled to recover statutory liquidated damages under GIPA to the extent such damages would constitute an unenforceable penalty.

**Tenth Affirmative Defense**
**(Violation of Due Process and Excessive Fines Clauses)**

The prayer for relief is barred in whole or in part because an award of statutory liquidated damages under GIPA would violate Union Pacific's due process rights and constitute an excessive fine. Based on Plaintiffs' allegation that the proposed class could be comprised of at least 1,000 members, any such recovery would be grossly excessive, exorbitant, and disproportionate to a bare, procedural or technical violation of the statute without any injury or harm and, thereby, violate the Due Process Clause and Excessive Fines Clause of the United States and Illinois Constitutions.

**Eleventh Affirmative Defense**
**(Assumption of Risk)**

Plaintiffs' claims are barred in whole or in part, to the extent Plaintiffs adequately plead negligence, by the doctrine of primary assumption of risk to the extent Plaintiffs and any putative class member approved and participated in the conduct of which they now complain. Such conduct would indicate that Plaintiffs and each putative class member implicitly consented to encounter an inherent and known risk. As such, Plaintiffs and each putative class member excused Union Pacific from any legal duty it may have had in connection with the conduct at issue.

**Twelfth Affirmative Defense**
**(Preemption)**

Putative class members' and Plaintiffs' claims may be preempted pursuant to state or federal law.

**Thirteenth Affirmative Defense**
**(No Class Action Treatment)**

Plaintiffs and/or the putative class members do not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and, thus, Plaintiffs' claims for class action relief are not appropriate for class action treatment.

## **Fourteenth Affirmative Defense**
### **(No Liquidated Damages)**

Union Pacific did not negligently, intentionally or recklessly violate any provision of GIPA. Therefore, neither the Plaintiffs nor the putative class members are entitled to the liquidated damages under 410 ILCS 513/40(a).

By pleading the foregoing affirmative defenses, Union Pacific does not concede that each of the matters covered are to be proven by Union Pacific. Union Pacific reserves its position that Plaintiffs retain the burden of proof on all matters asserted and are required to establish damages. Union Pacific reserves the right to amend its Answer and to assert additional affirmative defenses that may become available at a future date as discovery proceeds.

WHEREFORE, Union Pacific requests that Plaintiffs' Class Action Complaint be dismissed in its entirety with prejudice; that Plaintiffs take nothing by way of the Class Action Complaint; that Union Pacific be awarded its costs incurred herein; and that Union Pacific be awarded such further relief as the Court deems just and proper.

Date: September 4, 2024                              Respectfully submitted,


By:/s/ Harry N. Arger
_____
*Attorneys for Defendant, Union Pacific*
*Railroad Company*


Harry N. Arger (HArger@dykema.com)
Melanie J. Chico (MChico@dykema.com)
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Ph: (312) 876-1700
Fax: (312) 876-1155

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2024, I electronically filed the foregoing **Answer to Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all counsel of record via the Court's CM/ECF system.

By*: /s/ Harry N. Arger*